IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


ELIZABETH RICHARDSON, *et al*.          :
                                         :
    v.                                   :   CIVIL NO. CCB-09-631
                                         :
P&O PORTS BALTIMORE, *et al*.            :
                          ...o0o...

# MEMORANDUM

The plaintiffs, the surviving spouse and children of Christopher Richardson, Sr., have sued Mr. Richardson's former employer and union, among others, alleging their negligence contributed to the decedent's death. According to the complaint, on January 17, 2006, Mr. Richardson fell asleep while driving home after working a 22-hour shift as a stevedore at the Port of Baltimore and was involved in a fatal motor vehicle accident. At the time of his death, Mr. Richardson was employed by defendant P&O Ports Baltimore, Inc. ("P&O") and was a member of defendant International Longshoremen's Association, AFL-CIO's ("ILA") Local 333 chapter. His employment was governed by a collective bargaining agreement ("CBA") executed between Local 333 and the Steamship Trade Association of Baltimore, Inc. ("STA"), P&O's collective bargaining agent.

On January 25, 2009, the plaintiffs filed an amended complaint in the Circuit Court for Baltimore City, Maryland alleging that the defendants were negligent and breached fiduciary duties in failing to provide the decedent with a safe workplace and forcing him to work extended

1

shifts.[1] The plaintiffs sued P&O, STA, and both the ILA and Local 333 (together "the Union defendants"). The defendants timely removed the case to this court, and each has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. The defendants argue that the plaintiff's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and are time barred. The motions have been briefed fully, and no hearing is necessary. For the reasons that follow, the defendants' motions to dismiss will be granted.[2]

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Following the Supreme Court's ruling in

---

[1] The initial complaint, filed January 9, 2009, included claims on behalf of Mr. Richardson's estate. The amended complaint eliminated the estate's claims.

[2] In examining whether the plaintiff has stated a valid claim for relief, the court went outside the four corners of the complaint to consider the CBA. Where, as here, the plaintiff has notice of a document used by the defendant in a 12(b)(6) motion, does not dispute its authenticity, and relied on it in framing the complaint (*see* Compl. ¶¶ 9-10, 12-13), the motion to dismiss need not be converted into a summary judgment motion. *See, e.g.*, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Moreover, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (quoted in *Goodman v. Praxair*, 494 F.3d 458, 466 (4th Cir. 2007)). Rule 12(b)(6) motions to dismiss may properly raise statute of limitations defenses where the defense is apparent from the face of the complaint. *Wright v. United States Postal Serv.*, 305 F.Supp.2d 562, 563 (D. Md. 2004) (citing *Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1984)).

Section 301 of the LMRA states that:

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). It "provides federal courts not only with jurisdiction but also with the duty of developing a federal common law of labor rights." *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 247 (4th Cir. 1997) (citations omitted). The section, therefore, preempts any state law claim "the resolution of which depends substantially upon the analysis of a collective-bargaining agreement's terms." *Id.* "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' " *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 534 (4th Cir. 1991) (en banc)

3

(quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)). "Accordingly, 'state law does not exist as an independent source of private rights to enforce collective-bargaining contracts.' " *Davis*, 110 F.3d at 247 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

Section 301 does not, however, preempt all state law claims. *See id.* ("[Section] 301 does not preempt 'nonnegotiable rights conferred on individual employees as a matter of state law' ") (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)); *McCormick*, 934 F.2d at 535 ("[A] State may provide [substantive rights] to workers when adjudication of those rights does not depend upon the interpretation of [collective bargaining] agreements.") (citation omitted). Rather, a state claim is preempted when its resolution "is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Thus, "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement ... that decides whether a state cause of action may go forward." *Davis*, 110 F.3d at 248 (quoting *Livadas*, 512 U.S. at 123-24); *see also Jackson v. Kimel*, 992 F.2d 1318, 1326 (4th Cir. 1993) (concluding that employee's intentional infliction of emotional distress claim against supervisor predicated on allegations of a coerced sexual relationship was not preempted because reference to the collective bargaining agreement was not necessary to determine whether supervisor owed her a "duty of care" or to define "the nature and scope of that duty") (quoting *McCormick*, 934 F.2d at 536).

In their complaint, the plaintiffs contend that "[o]ne of the primary purposes for establishing working conditions in the CBA was to provide for the safety of the union members.... One such condition, either express or implied, prohibited members from working

4

consecutive hours beyond healthy limits." (Compl. ¶ 12.) The plaintiffs allege that while the union members relied on P&O and the Union defendants "to monitor enforcement of the terms of the CBA and not expose members to hazardous conditions such as working long hours in contravention of the CBA without proper sleep" (*id.*), the defendants "breached their respective duties to [the deceased] by not enforcing work rules created for his benefit; by ignoring safe working conditions and coercing its (sic) members to work beyond reasonable physical limits" (*id.* ¶ 19.). Thus, while the plaintiffs plead their negligence and breach of fiduciary duty claims as state-law torts, the claims are preempted because they are substantially dependent on an analysis of the CBA.

Despite the plaintiffs' protestations to the contrary, the duties they allege P&O breached stem from its obligations under the CBA. *See Birch v. Pepsi Bottling Group, Inc.*, 207 F.Supp.2d 376, 386-87 (D. Md. 2002) (holding employer's implied duty not to imperil employee was implied in CBA, thus § 301 preempted employee's claim of breach of that duty); *see also McCormick*, 934 F.2d at 536 (concluding, in context of the broad preemptive effect of § 301, that determination of employer's right to empty employee's locker required interpretation of CBA, even though agreement did not specifically address the issue, "to ascertain the extent of any duty" the employer may have owed the employee). Further, the complaint implicates no duties attributable to the Union defendants with the possible exception of their duties pursuant to the National Labor Relations Act to represent employee members in collective bargaining and the enforcement of resulting agreements. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-74 (1990). Accordingly, the plaintiffs' state-law claims against P&O and the Union defendants must be recast and litigated as a hybrid § 301/duty of fair representation claim. *See*

5

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983).[3]

The statute of limitations for such hybrid claims is six months. *DelCostello*, 462 U.S. at 169 (applying the statute of limitations from § 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b)); *see also McCormick*, 934 F.2d at 538. Because more than six months elapsed between when plaintiffs knew of the alleged breaches of duty and the filing of

---

[3]The plaintiffs seek leave to amend their complaint by removing certain references to the CBA in an attempt to avoid preemption of their state law claims. Regardless of how the plaintiffs attempt to artfully plead their causes of action, however, the CBA is the primary source of duties attributable to the employer or Union defendants in this case, similar to the circumstances in *Birch*. While the proposed amended complaint highlights that the CBA did not set the maximum number of hours that could be worked by Union members, as P&O points out, the CBA contains a complex seniority system establishing rights and duties among senior members and employers, including the assignment of work. (*See, e.g.*, CBA Art. IV.E.2 ("The employers having permanent gangs assigned to them shall employ those gangs in accordance with productivity, reliability, qualifications, and Article IX.1 [Hiring, Ordering and Dispatching] herein.").) P&O maintains that Mr. Richardson was a senior union member, and the plaintiffs have not disputed this fact. Rather, in their proposed amended complaint, the plaintiffs include language suggesting Mr. Richardson had a role in setting his shift hours. (*See* Proposed Am. Compl. ¶ 12 ("All of the Defendants ... had the power, authority and/or obligation to prevent or prohibit [the decedent] from exposing himself to dangerous conditions such as fatigue and lack of sleep and had a duty to do so."); *id.* ¶¶ 13,17 (amending the paragraphs to include allegations that the defendants "allow[ed]" Mr. Richardson to work a 22-hour shift the night of his accident).) Therefore, reference to the seniority provisions of the CBA and interpretation of their terms would be necessary to determine whether P&O had a duty, or even would have been permitted, to limit Mr. Richardson's shift the night of his accident. Moreover, the plaintiffs have failed to allege a set of facts consistent with the breach of any duty by the Union defendants independent of their aforementioned statutorily imposed duties to represent fairly member employees. The gravamen of the plaintiffs' claims against the Union defendants continues to be that they breached their duties "to represent the best interests of the members, including setting safe and reasonable working conditions[.]" (*Id.* ¶ 8.) Because the previous CBA did set restrictions on the number of hours an employee could work (*see* P&O Reply at 6 n.1), an analysis of the Union defendants' conduct would necessarily rely on whether they fairly represented Union members in negotiating the current CBA. Accordingly, the state law causes of action are preempted in any event, and the court will deny the motion for leave to amend as futile. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (noting that while leave to amend motions "should be granted liberally" under Rule 15, such motions may be denied where the proposed amendment would be futile).

this suit, the plaintiffs' claims against P&O and the union defendants must be dismissed as time-barred.[4]

The plaintiffs' causes of action against STA also must be dismissed.[5] STA was not the decedent's employer and owed no implied duty to the decedent to provide him with a safe workplace. The plaintiffs' complaint alleges neither any special duty owed by STA to the decedent nor any specific tortious conduct on the part of STA[6]; thus, pursuant to Rule 12(b)(6), the plaintiffs have failed to state a claim against STA. *See Twombly*, 550 U.S. at 555. Moreover, the same preemption rules discussed above would apply to any viable claims against STA, the bargaining agent of P&O, and those claims would be similarly time-barred.

A separate order follows.

   August 12, 2009
Date

Catherine C. Blake
United States District Judge

---

[4]While the court is sympathetic to the plaintiffs' argument that as grieving family members deciding whether to bring suit they should be exempt from the statute of limitations applicable to hybrid claims, that argument must fail in light of the Supreme Court's decision in *Rawson*, 495 U.S. at 371-72, that the survivors' claims in that case were preempted by and, thus, must comply with federal labor law.

[5]STA seeks leave to amend its answer to include a statute of limitations defense pursuant to Fed. R. Civ. P. 15. Because the amendment is not futile and poses no risk of prejudice to the plaintiffs, the court will grant the motion.

[6]The complaint alleges merely, in conclusory fashion, that STA acquiesced in or agreed to the long shifts imposed by P&O. (*See* Compl. ¶ 14.) There are no specific factual allegations that any STA employee or agent was involved in setting the long shifts or coercing the decedent to work a long shift. In short, the complaint fails to allege any action by STA that contributed to the decedent's accident.